UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JOSEPH MENDOZA,

                              Plaintiff,

                v.

THE CITY OF NEW YORK and THE FIRE
DEPARTMENT OF THE CITY OF NEW YORK,

                              Defendants.

**MEMORANDUM AND ORDER**
21-CV-2731 (LDH) (JRC)

---

LaSHANN DeARCY HALL, United States District Judge:

      Joseph Mendoza ("Plaintiff") brings this action against the City of New York (the "City") and the Fire Department of the City of New York ("FDNY," and together with the City, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to partially dismiss Plaintiff's complaint.

### BACKGROUND[1]

      Plaintiff, a Peruvian man, is a United States Navy veteran who suffers from post-traumatic stress disorder ("PTSD"). (Am. Compl. ¶¶ 16–17, 90, ECF No. 13.) Plaintiff became employed by the FDNY as a firefighter starting June 29, 2015. (*Id.* ¶ 18.) Plaintiff began reporting to Engine 297/Ladder 130 in College Point, New York, as a probationary firefighter.

---

[1] The following facts taken from the amended complaint (ECF No. 13) are assumed to be true for the purpose of this memorandum and order.

(*Id.* ¶ 21.)  On his first day, other firefighters dumped a bucket of water, followed by flour, on Plaintiff from a window above the entrance.  (*Id.*)  Plaintiff believes that this behavior was part of a hazing practice to which probationary firefighters are routinely subjected.  (*Id.* ¶ 22.)  Still, Plaintiff complains that he was subjected to insults and demeaning comments from several firefighters relating to his race, national origin, disability, and uniformed service.  (*Id.* ¶ 23.)

According to the Complaint, Plaintiff began to experience a hostile work environment and discrimination starting in November 2015.  (*Id.* ¶ 21.)  Specifically, on one of Plaintiff's first tours, Levy Matthews, a fellow firefighter, stated, "[w]ow!  They let the MS-13 join the FDNY now.  Where the fuck [] did they find you?"  (*Id.* ¶ 24.)  Matthews also began calling Plaintiff "Machete" because, according to Matthews, Plaintiff looked like the recurring film character "Machete" that is portrayed by the Latino American actor, Danny Trejo.  (*Id.* ¶ 25.)  On an unspecified date, Matthews left a machete on top of Plaintiff's locker, in furtherance of the joke.  (*Id.*)  And, when Plaintiff confronted Matthews about it, Matthews responded, "I have to be careful with you.  I know you're fucking crazy because of your PTSD."  (*Id.* ¶ 26.)

Around the time when former President Donald J. Trump was elected, Matthews yelled out "Yes!  Finally the wall is going to be built!  Sorry, [Plaintiff].  Your family isn't welcomed here no more."  (*Id.* ¶ 28.)  Matthews made the comment knowing that Plaintiff's stepfather was in United States Immigration and Customs Enforcement ("ICE") custody.  (*Id.*)  When Trump won the election, the firehouse "with mainly white men from Long Island" chanted "build the wall," again while knowing that Plaintiff's stepfather was in ICE custody.  (*Id.* ¶ 29.)  They also chanted "[m]ake the Point great again," with "the Point" being a reference to "College Point" where the firehouse is located.  (*Id.* ¶ 30 & n.1.)  Through the remainder of 2015 and 2016, Matthews would refer to Plaintiff as "Mexican" and "Spic."  (*Id.* ¶ 31.)  And, Matthews, who

2

Plaintiff alleges is Jewish, told Plaintiff that "Jews don't like you guys." (*Id.*)

At the end of 2016, Plaintiff was sent to "another location" to lose weight in order to meet the weight requirements necessary to transition from his probationary status. (*Id.* ¶ 32.) When Plaintiff returned to the firehouse, the words "Fat Joe" were spelled out in doughnuts glued onto his locker. (*Id.* ¶ 33.) Plaintiff believes that he was called "Fat Joe" because Fat Joe is a Latino American rapper known for his "rotund physique." (*Id.* ¶ 33 n.2.) When Plaintiff complained about this incident to a senior firefighter, Frank Guzman, Guzman responded that it was part of the "games" the firefighters play and directed Plaintiff to "shut up and clean it." (*Id.* ¶ 34.) Plaintiff alleges that from that day forward, everyone at the firehouse regularly called him Fat Joe, and that Matthews frequently told Plaintiff to stop eating so many burritos, which Plaintiff alleges is a traditionally Mexican dish. (*Id.* ¶ 35 & n.3.)

In 2017, Plaintiff procured a soda machine for the firehouse, which made him responsible for keeping the soda stocked. (*Id.* ¶ 37.) Among other soda brands, Plaintiff ordered a Peruvian brand and a Colombian brand. (*Id.*) Matthews responded with anger and claimed that Plaintiff was trying to make the FDNY and the firehouse "more Latino." (*Id.*)

According to the amended complaint, the firefighters use a GroupMe group chat to communicate and "exchange racist statements." (*Id.* ¶ 38.) In the summer of 2018, Matthews wrote in the group chat that "[w]e got to get rid of these brown guys. Trump was right. Build that wall." (*Id.* ¶ 39.) Matthews wrote these comments in response to another Latino American firefighter who arrived late to work. (*Id.*) On August 13, 2018, Derek Silver, another firefighter, wrote "[n]ow all you need to do is start working on the 'problem Latino' and we'll be in business." (*Id.* ¶ 40.) Plaintiff believes that Silver's comment was a reference to the number of Latinos working in the firehouse. (*Id.*) On August 13, 2018, James Pergamo, another firefighter,

3

wrote, "MTGPA," which, according to Plaintiff, meant "make the Point great again." (*Id.* ¶ 41.) On November 8, 2018, Silver wrote that another firefighter in the firehouse "needed to start taking care of the 'Muslim problem.'" (*Id.* ¶ 42.) In the fall of 2018, Matthews sent a meme to the group chat depicting a baby with a leash attached to it with the caption "[n]ot just for little white kids . . . Now!!! Also for lazy brown parents." (*Id.* ¶ 43.) Matthews would refer to Plaintiff in the group chat as a "Colombian drug lord." (*Id.* ¶ 44.) In the fall of 2018, Pergamo wrote in the group chat "Good. Uber driver old ass Dominican guy blasting bachata I'd rather take a fucking d-wee." (*Id.* ¶ 45.) Plaintiff understood this statement to mean that Pergamo would rather drive drunk than be driven by a Dominican person playing Dominican music. (*Id.*) On May 22, 2019, Christian Mendler posted a photograph in the group chat of a Colombian soda can that was stuck in the soda machine as a means to suggest that Plaintiff fix it. (*Id.* ¶ 46.) Matthews responded, "Hispanic soda? Even they can't stay vertical in the [firehouse]." (*Id.*) Plaintiff believes that Matthews meant that Latino firefighters slept all day. (*Id.*) Matthews' comment received many "likes" from the white firefighters in the group chat. (*Id.*)

Plaintiff alleges that "[t]hroughout his employment," he repeatedly complained about the harassment and hostile work environment to senior firefighters Guzman and Joseph Bongiovi, both of whom told Plaintiff that it was "just part of the culture." (*Id.* ¶ 49.)

On April 1, 2018, Plaintiff voluntarily checked into a rehabilitation center. (*Id.* ¶ 50.) Plaintiff received in-patient care for approximately one month, after which he participated in out-patient care for approximately two months. (*Id.*) In June 2018, when Plaintiff sought to return to full duty with the FDNY, "Defendants" insisted that he take a drug test on June 29, 2018. (*Id.* ¶ 51.) On the advice of his union attorney, Plaintiff initially refused to take the drug test. (*Id.* ¶ 52.) Plaintiff alleges that prior to Defendants' request to take the test, he "had never had

4

any prior disciplinary issues nor failed any drug tests and Defendants therefore had no cause to require him to undertake a drug test to return to full duty." (*Id.*) As a result of Plaintiff's refusal, he was suspended for 30 days without pay. (*Id.* ¶ 53.)

Upon the completion of his suspension, Plaintiff was assigned light duty on the seventh floor at the FDNY headquarters. (*Id.* ¶ 54.) In May 2019, Plaintiff learned that "higher ups in the chain of command" did not want him working on the seventh floor with them for fear that Plaintiff would "flip out and do something stupid" because of his PTSD. (*Id.* ¶ 59.) As a result, despite working on the seventh floor without issue, Plaintiff was reassigned to the fifth floor. (*Id.* ¶ 60.) Plaintiff was returned to the seventh floor in the same month. (*Id.* ¶ 61.)

On April 22, 2019, Plaintiff learned that Defendants sought to terminate Plaintiff's employment because they claimed that he attempted to bribe the drug test administrator in June 2018. (*Id.* ¶ 55.) Plaintiff complained of race and disability discrimination to the Office of the Mayor of New York City on April 26, 2019, and again on May 8, 2019. (*Id.* ¶ 56.) Although Plaintiff's complaints were forwarded to the FDNY Equal Employment Office ("EEO"), the EEO concluded there was no evidence of discrimination. (*Id.* ¶ 58.)

In November 2019, Plaintiff attended a "Step I Conference" to determine whether he should be terminated for alleged bribery. (*Id.* ¶ 62.) The hearing officer determined that there was no evidence of any attempt to bribe the test administrator, but nevertheless recommended a penalty of ten days' pay for Plaintiff's refusal to take his drug test. (*Id.* ¶ 63.) Defendants sought a second hearing, however, for which a "pre-trial hearing" was held in March 2020. (*Id.* ¶ 65.) There, the hearing officer suggested that Plaintiff be subject to a 15-day suspension and recommended that Defendants should reconsider their attempt to terminate Plaintiff. (*Id.* ¶ 66.) Defendants nevertheless continued to seek Plaintiff's termination. (*Id.* ¶ 68.) Due to the

5

COVID-19 pandemic, a "Step II Conference" was not held until September 2020. (*Id.* ¶¶ 67–68)

In September 2020, Plaintiff was notified by a friend that all of his personal belongings were removed from his locker at the College Point firehouse and thrown in the garbage. (*Id.* ¶ 70.) Plaintiff's photograph at the firehouse was defaced with the word "[r]at." (*Id.* ¶ 71.) On October 1, 2020, Plaintiff filed a complaint with the FDNY EEO, but it took no action. (*Id.* ¶ 72.)

The amended complaint does not allege what occurred at the September 2020 conference or any finding resulting therefrom, or specifically whether he was terminated. But, both Defendants and Plaintiff attached a report and recommendation authored by Administrative Law Judge Noel R. Garcia dated May 25, 2021. (*See* Ex. A ("ALJ Determination"), Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 17-2.) Judge Garcia found that "the credible evidence establishes that [Plaintiff] attempted to bribe the investigator, which also constitutes a violation of [Plaintiff's] oath of office." (*Id.* at 16.) Judge Garcia recommended termination of Plaintiff's employment. (*Id.* at 17–18.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the

6

Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

## DISCUSSION

### I.   Title VII and ADA Statute of Limitations

Defendants argue that Plaintiffs' Title VII and ADA retaliation claims should be dismissed as untimely insofar as the claims concern conduct that took place prior to January 16, 2020. (*See* Defs.' Mem. Supp. Mot. to Dismiss ("Defs.' Mem.") at 4–5, ECF No. 16-6.)The Court agrees.

In New York, a plaintiff's Title VII and ADA claims must be brought before the EEOC or local agency equivalent, no more than 300 days after the alleged unlawful employment action occurs. *See Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 579 (2d Cir. 2020) (summary order) ("Before an individual is permitted to bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC . . . within 300 days of the alleged discriminatory conduct."); *Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011) (summary order) ("[P]laintiffs asserting ADA claims must . . . file an EEOC charge within 300 days of the alleged discriminatory conduct"). Accordingly, any conduct that occurred more than 300 days before a plaintiff files a complaint with the EEOC or the local agency equivalent is not actionable in federal court. Here, Plaintiff filed a charge with the EEOC on November 11, 2020. (*See* Am. Compl. ¶ 5.) Therefore, any conduct that occurred prior to January 16, 2020, which is 300 days before November 11, 2020, is not actionable absent the application of a tolling doctrine.

Plaintiff argues that the continuing violation doctrine, an equitable tolling doctrine, saves

his retaliation claims. (*See* Pl.'s Opp'n at 4–6.) The continuing violation doctrine "applies 'to claims composed of a series of separate acts that collectively constitute one unlawful [] practice.'" *Smith v. City of New York*, 664 F. App'x 45, 47 (2d Cir. 2016) (summary order) (quoting *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015)). Oddly, Plaintiff argues that he has satisfied the requirements for the continuing violation doctrine "by filing his EEOC charge of discrimination within 300 days of any act that is part of the hostile work environment, as the Defendants [sic] was continuous and ongoing from November 2015 up to and including Plaintiff's termination." (Pl.'s Opp'n at 5.) This argument is curious because the amended complaint does not include a Title VII hostile work environment claim. Even if it did, Plaintiff provides no authority for the proposition that if a hostile work environment claim is saved by the continuing violation doctrine, so too are retaliation claims. Indeed, they are not. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 114–15 (2002) (holding that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" constituting disparate treatment and retaliation are "different in kind" from hostile work environment claims). In any event, the only pre-January 16, 2020 adverse employment action Plaintiff relies upon for his retaliation claims is the November 2019 disciplinary conference, which is a "discrete act" to which the continuing violation doctrine does not apply. *See Valtchev v. City of New York*, 400 F. App'x 586, 589 (2d Cir. 2010) (summary order) (affirming district court finding that "disciplinary proceedings" are discrete acts to which continuing violation doctrine does not apply). Accordingly, any retaliation claims concerning an adverse employment action occurring prior to January 16, 2020, is dismissed as time barred.[2]

---

[2] The Court declines to dismiss for lack of timeliness Plaintiff's allegation that "Defendants continued to seek Plaintiff's termination" after the November 2019 disciplinary conference because that decision is undated, and therefore, the Court is unable to assess whether it is timely. (Am. Compl. ¶ 65.)

8

## II. Section 1983, NYSHRL, and NYCHRL Statute of Limitations[3]

Defendants argue that Plaintiff's Section 1983, NYSHRL, and NYCHRL claims for disparate treatment, hostile work environment, and retaliation are time barred to the extent they pertain to conduct that occurred prior to May 14, 2018. (*See* Defs.' Mem. at 5.) The Court agrees, in part. Section 1983 claims are subject to a three-year statute of limitations. *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) ("The statute of limitations applicable to claims brought under §§ 1981 and 1983 in New York is three years."). The same limitations period applies to NYSHRL and NYCHRL claims. *See Alameda v. N.Y.C. Health & Hosps., Corp.*, No. 155795/2017, 2018 WL 6171634, at *2 (N.Y. Sup. Ct. Nov. 26, 2018) (noting that "claims brought under the [NYSHRL] and [NYCHRL] have a three year statute of limitations"). Therefore, because Plaintiff's complaint was filed on May 14, 2021, Plaintiff's claims that accrued prior to May 14, 2018, are time barred absent an application of the continuing violation doctrine.

Plaintiff does not argue that the continuing violation doctrine saves his Section 1983 disparate treatment or retaliation claims. Indeed, Plaintiff would have difficulty doing so because such claims are typically premised upon an employer's discrete discriminatory acts to which the continuing violation doctrine does not apply. *See Harris v. Bd. of Educ. of the City Sch. Dist.*, 230 F. Supp. 3d 88, 98 (E.D.N.Y. 2017) ("The 'continuing violation' doctrine applies only to harassment claims[]" and "is inapplicable to discrimination and retaliation claims") (citing *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 212 (E.D.N.Y. 2014)). In any

---

[3] Although Plaintiff raises Section 1981 claims, the Court construes them as Section 1983 claims because, as Defendants point out, only Section 1983 provides a cause of action against Defendants for violations of civil rights. *See Duplan v. City of New York*, 888 F.3d 612, 620–21 (2d Cir. 2018) ("We . . . join nine of our sister Circuits in concluding that § 1981 does not provide a separate private right of action against state actors.").

9

event, "[w]hen a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned, . . . especially in the case of a counseled party where a court may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (summary order) (internal citations and quotation marks omitted); *see also Belfon v. Credit Check Total Consumerinfo.com, Inc.*, No. 2:18-CV-408, 2018 WL 4778906, at *8 (E.D.N.Y. Oct. 1, 2018) (finding that plaintiff's failure to respond to arguments raised in motion to dismiss constitutes an abandonment of those claims and collecting cases holding the same). Accordingly, the Court treats Plaintiff's disparate treatment and retaliation claims that accrued prior to May 14, 2018, as abandoned.

  Plaintiff's hostile work environment claims warrant different treatment. "A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 250 (E.D.N.Y. 2012) (quoting *Morgan*, 536 U.S. at 122). As Plaintiff correctly argues, the amended complaint alleges a continuous and ongoing period of racial harassment that began in 2015 and continued through at least May 2019, when he alleges he received a racially offensive text message in the group chat. (*See* Pl's Opp'n at 6–7; *see also* Am. Compl. ¶¶ 23, 38, 56.) Plaintiff alleges he was subjected to racially demeaning conduct throughout this time period, and none of those individual comments or racial incidents could constitute a discrete act or be considered unrelated to the racial incidents he experienced within the limitations period. In pressing the Court to find that Plaintiff's hostile work environment claim is time-barred, at least in part, Defendants assert that the alleged conduct is comprised of discrete acts but they do not explain why or provide any

applicable legal authority in support of this contention. Instead, Defendants rely upon *Smith v. City of New York* and *Sotomayor v. City of New York*. But, such reliance is misplaced because neither case involved racially offensive comments. *See Smith*, 664 F. App'x at 47 (holding that plaintiff's termination was a discrete act); *Sotomayor*, 862 F. Supp. 2d at 250–51 (holding that negative performance reviews were discrete acts).

In sum, insofar as they accrued prior to May 14, 2018, Plaintiff's claims pursuant to Section 1983, NYSHRL, and NYCHRL for disparate treatment and retaliation are time barred; the hostile work environment claims are not.

### III. Section 1983, NYSHRL, and NYCHRL – Disparate Treatment Based on Race and National Origin

Disparate treatment claims pursuant to § 1983, the NYSHRL, and the NYCHRL are subject to the same pleading standards as those brought pursuant to Title VII. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) ("Once the color of law requirement is met, a plaintiff's equal protection claim parallels his Title VII claim[.]" (internal quotation marks omitted)); *see also Kugel v. Queens Nassau Nursing Home*, 568 F. Supp. 3d 253, 264 (E.D.N.Y. 2021) (noting that NYSHRL and NYCHRL share the same analytical framework as Title VII). Accordingly, to plead a disparate treatment in employment claim under each statute, "a plaintiff must plausibly allege that (1) 'the employer took adverse action against him, and (2) his race, color, . . . or national origin was a motivating factor in the employment decision." *Id.* at 86; *but see Kugel*, 568 F. Supp. 3d at 264 (noting that NYCHRL claims must be analyzed "separately and independently from any other claims and construed broadly in favor of discrimination plaintiffs"). Because direct evidence of discrimination is difficult to obtain, a complaint can create an inference of discrimination with allegations of "an employer's (1) criticism of the employee's performance in ethnically degrading terms, (2) invidious comments

11

about others in the employee's protected group, and (3) favorable treatment of employees not in the protected group." *Daniel v. City of New York*, No. 20-CV-11028, 2021 WL 5988305, at *6 (S.D.N.Y. Dec. 16, 2021) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 312–13 (2d Cir. 2015)).

Defendants argue that Plaintiff's allegations fail to give rise to a minimal inference of discrimination based upon Plaintiff's race or national origin. (*See* Defs.' Mem. at 11.) The Court agrees.

Plaintiff argues that the drug test, his subsequent suspension, and his relegation to light duty are each adverse employment actions that support his disparate treatment claim. (*See* Pl.'s Opp'n at 10–11.) But, the amended complaint fails to allege any facts from which the Court can infer that these actions were discriminatory. It is true that in pleading that the College Point firehouse was a hostile work environment, Plaintiff alleges numerous racially offensive comments made to him, and he alleges that he was part of a group chat in which co-workers used racially offensive language. (*See* Am. Compl. ¶¶ 23–46.) However, these allegations are wholly divorced from the adverse employment actions on which Plaintiff's disparate treatment claims are predicated. *See Daniel*, 2021 WL 5988305, at *8 (noting that alleged comments "plausibly suggest bias" but "as pled [the] remarks are untethered to the [adverse employment action]"). Moreover, Plaintiff fails to sufficiently allege that, with respect to each of his claimed adverse employment actions, he was treated differently than employees outside of his protected class. Plaintiff alleges "on information and belief" that "numerous other firefighters, who actually tested positive during drug tests, were not terminated and were permitted to return to full duty." (Am. Compl. ¶ 69.) But, based on Plaintiff's own allegations, he is not similarly situated to those firefighters because he did not fail the test, he refused to take the test. (*Id.* ¶ 52.) In the

12

absence of allegations that Plaintiff was similarly situated to those firefighters, he has failed to plead the requisite inference of discrimination. *See Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 612 (E.D.N.Y. 2017) (plaintiff failed create an inference of discrimination based upon allegation that defendant "reinstated several men with a clear drug/alcohol disability" because she alleged she had no drug or alcohol dependency and therefore was not similarly situated). Plaintiff's disparate treatment claims pursuant to § 1983, NYSHRL, and NYCHRL,[4] based upon race and national origin must be dismissed.

### IV. NYSHRL and NYCHRL – Disability and Military Status Discrimination

As with any discrimination claim, a Plaintiff seeking to establish a disability or military status discrimination claim must plead both an adverse employment action and facts supporting an inference of discrimination. *See Kopchik v. Town of East Fishkill*, 759 F. App'x 31, 37 (2d Cir. 2018) (summary order) (a plaintiff must plead "the adverse action was imposed because of her disability" and plaintiff "need only give plausible support to a minimal inference of discriminatory motivation" (quotation marks and citation omitted)); *Potts v. City of Binghamton*, No. 3:21-CV-505, 2022 WL 4448226, at *5 (N.D.N.Y. Sept. 23, 2022) (discrimination on the basis of military status requires a plaintiff to "allege facts demonstrating that the adverse action occurred under circumstances giving rise to an inference of discrimination." (quotation marks and citation omitted)); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) ("A [NYCHRL] complaint must still allege facts on the basis of which a court can find differential treatment—*i.e.* the plaintiff was 'treated less well—because of a discriminatory intent.'" (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109–10 (2d Cir. 2013)).

---

[4] Although the NYCHRL is construed more liberally, "a plaintiff must still plausibly allege that he or she was subjected to unequal treatment because of a protected characteristic." *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 173–74 (E.D.N.Y. 2017). Because Plaintiff failed to plausibly allege such facts, his NYCHRL claim fails.

13

Defendant argues that Plaintiff has failed to plead facts sufficient to give rise to an inference of discrimination based upon his disability or military status.  (*See* Defs.' Mem. at 12–15.)

Here, Plaintiff maintains, as he did with the race discrimination claim, that the drug test, relegation to light duty, and suspension, each constitute an adverse employment action.  (*See* Pl.'s Opp'n at 10–11.)  But, the Court already determined *supra* that there are insufficient facts to support a plausible inference of discrimination in connection with this alleged conduct.  Thus, to the extent that Plaintiff's NYSHRL and NYCHRL claims are premised upon this conduct, they are dismissed.

That said, Plaintiff also argues that his transfer to the fifth floor constitutes an adverse employment action with respect to his disability discrimination claim.  (*See* Pl.'s Mem. at 11.)  There can be no question that Plaintiff has alleged that the transfer was due to his disability because he alleges that his disability was the stated reason for his transfer.  (*See* Am. Compl. ¶¶ 59–61.)  Nonetheless, Defendants maintain that because the transfer lasted for less than one month, it cannot constitute an adverse employment action for the purposes of his NYSHRL and NYCHRL claims as a matter of law.  (*See* Defs.' Mem. at 12.)  The Court agrees, but only as to the claims brought pursuant to the NYSHRL.  To plead an adverse employment action for purposes of the NYSHRL, a plaintiff must allege that he "endure[d] a 'materially adverse change' in the terms and conditions of employment."  *See Malcom v. Honeoye Falls Lima Cent. Sch. Dist.*, 483 F. App'x 660, 662 (2d Cir. 2012) (summary order) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000), *abrogation on other grounds recognized by Davis-Garrett v. Urban Outfitters, Inc.*, 921 F.3d 30 (2d Cir. 2019)).  The adverse action alleged "must be more disruptive than a mere inconvenience or an alteration of job responsibilities" and "not every unpleasant matter short of discharge or demotion creates a cause of action."  *Pease v.*

*City of New York*, No. 19-CV-7693, 2021 WL 2651400, at *9 (S.D.N.Y. June 28, 2021) (internal quotation marks and citations omitted).

Here, Plaintiff's allegation that he was transferred to the fifth floor on the basis of his PTSD, while troubling, cannot satisfy this standard because "[f]or an employee's reassignment to a different location to rise to the level of an 'adverse action,' it must impact the terms of plaintiff's employment in a substantially negative way." *Id.* at *10 (*citing Felder v. Madison Square Garden*, No. 15-CV-4038, 2018 WL 1872061, at *7 (S.D.N.Y. Jan. 29, 2018)). The amended complaint is devoid of any allegation that would allow the Court to infer that the brief transfer affected the terms and conditions of Plaintiff's employment. *Cf. id.* (plaintiff's transfer to a different location was sufficient to state a claim where he alleged that the new location had a "well-known reputation within the NYPD and the City of New York as the precinct [to which] COs banish POs they deem 'problem' Officers"). Accordingly, Plaintiff's disability discrimination claim pursuant to the NYSHRL must be dismissed for failure to establish an adverse employment action.

The stringent standard against which the Court assesses an adverse employment action in the context of an NYSHRL claim is significantly relaxed, however, in the NYCHRL context. That is, "under the [NYCHRL] the plaintiff need not show that [he] was subject to an adverse employment action." *Rozenfeld v. Dep't of Design & Constr.*, 875 F. Supp. 2d 189, 206 (E.D.N.Y. 2012); *see also Mihalik*, 715 F.3d at 110 (for purposes of NYCHRL "the plaintiff need only show differential treatment—that [he] is treated 'less well'—because of a discriminatory intent" (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.2d 27, 39 (1s Dep't 2009)). Instead, a plaintiff "need only show that [he] has been treated less well than other employees because of his membership in a protected class." *Rozenfeld*, 875 F. Supp. 2d at 206.

15

Apparently, Defendants fail to appreciate this distinction because they argued for dismissal only pursuant to the standard relevant to the NYSHRL. Plaintiff pleaded that he was sent to the fifth floor because "the higher ups in the chain of command did not want him working on the 7th floor with them anymore because they found out about Plaintiff's PTSD and were afraid he would 'flip out and do something stupid.'" (Am. Compl. ¶ 59.) This is sufficient to plead a disability discrimination claim under the NYCHRL.

V.	Section 1983, Title VII, ADA, NYSHRL, and NYCHRL – Retaliation

To survive a motion to dismiss a retaliation claim, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e–3(a)). Put differently, a plaintiff "must plausibly plead a connection between the [adverse] act and his engagement in protected activity." *Vega*, 801 F.3d at 90. To do so, the complaint must "plausibly allege that retaliation was a 'but-for' cause of the employer's adverse action." *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). Indeed, "It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Id.* Of course, causation can be sufficiently alleged "indirectly by timing: protected activity followed closely in time by [an] adverse employment action." *Id.* (citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001)). Critically, however, "the 'continuation' of alleged adverse employment actions 'initiated long before the protected activity . . . does not, without more, logically support an inference that the protected activity prompted retaliation.'" *Skates v. Incorporated Vill. of Freeport*, No. 15-CV-1136, 2016 WL 1459659, at *17 (E.D.N.Y. Jan. 28, 2016) (quoting *Agard v. N.Y.S. Dep't of Tax'n & Fin.*, No. 10-CV-4726, 2012 WL 601474, at *7 (E.D.N.Y. Feb. 23, 2012)).

Defendants argue that Plaintiff's complaint lacks facts sufficient to create an inference that any adverse action was taken against Plaintiff because of his protected activity. (*See* Defs.' Mem. at 17–18.) The Court agrees. The earliest date on which Plaintiff argues he engaged in protected activity is April 26, 2019, when he complained to the Office of the Mayor. (Am. Compl. ¶ 55.) Because this complaint post-dates the date on which Plaintiff learned Defendants had initiated a disciplinary proceeding against him (*id.* ¶ 55), the complaint could not have been the impetus for that action. Moreover, the Court cannot infer that his complaint to the Office of the Mayor motivated Defendants' decision to seek Plaintiff's termination at the March 2020 and September 2020 disciplinary conferences. According to Plaintiff's own words, "Defendants continued to seek his termination" in relation to his drug test misconduct. (*Id.* ¶ 65.) In other words, the 2020 conferences were the continuation of a disciplinary process that began prior to Plaintiff's protected activity. *See Agard*, 2012 WL 601474, at * 7 (dismissing retaliation claim where alleged adverse actions started "well before" the protected activity). Absent additional allegations, the Court cannot infer that Plaintiff's complaint to the Office of the Mayor was a but-for cause of the alleged disciplinary conferences or the Defendants' efforts to seek his ultimate termination.

Resisting this conclusion, Plaintiff argues that the September 2020 disciplinary conference "constitutes a second independent decision to pursue Plaintiff's termination, which occurred after Plaintiff's complaints of discrimination." (Pl.'s Mem. at 12.) According to Plaintiff, "the case was essentially over" after the November 2019 disciplinary conference because "the Hearing Officer . . . determined termination was not warranted and recommended a penalty of ten day's pay." (*Id.*) But, Plaintiff does not provide any facts in support of this contention. Indeed, he does not provide any factual detail about the disciplinary process at all.

17

Equally problematic to Plaintiff's claim, is his failure to identify the individuals about whom he complained or the individuals involved in the decision to press for termination. These facts, if alleged, might have allowed the Court to infer, for example, that the decisionmaker knew about Plaintiff's protected activity and was motivated by it to seek Plaintiff's termination as a result. The amended complaint establishes only that Defendants sought to terminate Plaintiff because they believed he engaged in bribery. Therefore, Plaintiff's retaliation claims must be dismissed.

### VI.   Monell Liability

Defendants argue that Plaintiff has failed to plausibly allege liability against the City or FDNY because Plaintiff has failed to allege the existence of a policy or that "plaintiff's co-workers were the moving force behind the putative policy in question."[5] (*See* Defs.' Mem. at 19.) The Court disagrees.

To plead a Section 1983 claim against a government entity, a plaintiff must plead "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)). A plaintiff can establish a "policy or custom" by alleging "that a discriminatory practice of subordinate employees was 'so manifest as to imply the constructive acquiescence of senior policy-making officials[.]'" *Patterson*, 375 F.3d at 226 (citing *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992)). Plaintiff alleged just that. Plaintiff alleges persistent racial misconduct in the College Point firehouse starting during his probationary period and continuing through 2019. (*See* Am. Compl. ¶¶ 21–46.) He alleges that he complained to senior firefighters throughout his employment, and the

---

[5] Defendants misquote the law. A plaintiff must establish that the policy, "as opposed to the individual actors, was the 'moving force' behind the conduct in question." *See Pierre v. City of New York*, No. 17-CV-5782, 2020 WL 353538, at *5 (S.D.N.Y. Jan. 21, 2020).

18

response he received was that "it is just part of the culture" and that "it was part of the 'games' the firefighters play." (*Id.* ¶¶ 34, 49.) Moreover, he alleges at least one specific incident involving other Latino firefighters at College Point. (*Id.* ¶ 39.) Defendant does not meaningfully argue otherwise. Instead, Defendant relies on *Missel v. County of Monroe*, 351 F. App'x 543 (2d Cir. 2009), which is inapposite because it does not involve employment discrimination claims and because the plaintiff's allegations concerning municipal liability were conclusory. *See Missel v. Cnty. of Monroe*, No. 07-CV-6593, 2008 WL 2357637, at *3 n.4, *4 (W.D.N.Y. June 4, 2008) (plaintiff, who alleged harassment by Monroe County deputy failed to allege any facts establishing a policy through which deputy acted). Accordingly, Defendants' motion to dismiss Plaintiff's *Monell* claim for hostile work environment is denied.

## CONCLUSION[6]

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's ADA, Title VII, § 1983, NYSHRL, and NYCHRL retaliation claims are DISMISSED. Plaintiff's § 1983, NYSHRL, and NYCHRL disparate treatment claims based upon race and national origin are DISMISSED. Plaintiff's NYSHRL and NYCHRL disparate treatment claims based upon military status are DISMISSED. Plaintiff's NYSHRL disparate treatment claim based upon disability is DISMISSED. Defendants' motion to dismiss Plaintiff's NYCHRL disparate treatment claim based upon disability is DENIED. Defendants' motion to dismiss Plaintiff's Section 1983 hostile work environment claim is DENIED.

---

[6] Defendants argue that Plaintiff is collaterally estopped from "contesting the [Administrative Law Judge's] factual finding that he" attempted to bribe the drug test administrator. (Defs.' Mem. at 6–7.) Plaintiff does not contest this point, clarifying that "Plaintiff, however, never litigated the issue of whether Defendants' decision to seek Plaintiff's termination was motivated by a discriminatory or retaliatory animus." (Pl.'s Opp'n at 8.) In any event, the Court need not reach this argument because the Court previously concluded that any disparate treatment claim or retaliation claim premised upon the disciplinary hearing must be dismissed.

19

|  |  |
|---|---|
|  | SO ORDERED. |
| Dated: Brooklyn, New York<br>　　　　March 31, 2023 | /s/ LDH<br>LASHANN DEARCY HALL<br>United States District Judge |

20